**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

DIANA L. WOLFE,            )
       Plaintiff,        )
                    )
v.                    )        **CIVIL ACTION NO. 2:14-13479**
                    )
CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,  )
       Defendant.      )

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

       This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered May 1, 2014 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 13 and 14.) and Plaintiff's Reply. (Document No. 15.)

       The Plaintiff, Diana L. Wolfe (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on September 8, 2010 (protective filing date), alleging disability as of July 16, 2010, due to heart problems and depression. (Tr. at 10, 74-75, 76-80, 120.)  The claims were denied initially and upon reconsideration. (Tr. at 30-32, 37-39, 524-26, 530, 531-34, 540-41.) On June 21, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 40-41.) A hearing was held on February 6, 2013, before the Honorable Sabrina M. Tilley. (Tr. at 546-73.)  By decision dated March 21, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-25.) The ALJ's decision became the final decision of the Commissioner on January 31, 2014,

when the Appeals Council denied Claimant's request for review. (Tr. at 3-6.) Claimant filed the present action seeking judicial review of the administrative decision on March 28, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace),

> we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, July 16, 2010. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "dissection of the left circumflex artery requiring revascularization with three stents, atypical chest pain, obesity, major depressive disorder/mood disorder (nos), generalized anxiety disorder, panic disorder with agoraphobia, and personality disorder (nos)/borderline personality disorder," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [C]laimant can lift up to twenty pounds occasionally, ten pounds frequently, and stand and walk six hours in an eight-hour day. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl, but should never climb ladders, ropes, or scaffolds. The [C]laimant should avoid concentrated exposure to extreme cold, extreme heat, hazards, fumes, odors, dusts, gases, and poor ventilated areas. She is limited to simple routine work with occasional interaction with coworkers and supervisors, and no interaction with the general public. She can make only simple work-related decisions in an environment that does not include fast-paced production

5

requirements, and that has few if any changes in work routine.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past

relevant work. (Tr. at 23, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a

price marker, hand packer, and sorter at the unskilled, light level of exertion. (Tr. at 23-34, Finding

No. 10.) On this basis, benefits were denied. (Tr. at 24, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on January 20, 1973, and was 40 years old at the time of the

6

administrative hearing, February 6, 2013. (Tr. at 23, 74.) The ALJ found that Claimant had a tenth grade, or limited education and was able to communicate in English. (Tr. at 23, 123-24.) In the past, she worked as a cashier/sales clerk. (Tr. at 23, 125, 139-46.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and discusses it herein in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to give proper weight to the opinions of Amy Guthrie, M.A., the consultative examiner, and Mary Fauteux, PA-C, Claimant's treating source. (Document No. 13 at 13-16.) Claimant asserts that the ALJ in turn, based her RFC on her own lay opinion rather than the supported opinions contained in the record, which resulted in error when the ALJ found that Claimant would not exceed the tolerable number of absences. (Id.) Claimant notes that the ALJ gave no weight to the opinions of Frank Roman, Ed.D., and Bob Marinelli, Ed.D., and some weight to Ms. Guthrie's opinion. (Id. at 14-15.) She asserts that the ALJ selectively relied on portions of Dr. Guthrie's and Ms. Fauteux's opinions while rejecting other portions. (Id. at 15-16.) Regarding Dr. Guthrie's opinion on absences, Claimant asserts that the VE testified that excessive absences would preclude substantial gainful activity. (Id. at 16.) Thus, had the ALJ given Dr. Guthrie's opinion greater weight, a finding of disability would have been compelled. (Id.)

In response, the Commissioner asserts that the ALJ properly considered the opinions of Ms. Guthrie and Ms. Fauteux "to the extent necessary to permit meaningful judicial review." (Document No. 14 at 6.) The Commissioner asserts that the ALJ gave only some weight to Ms. Guthrie's opinion because it was inconsistent with her evaluation. (Id. at 7.) Ms. Guthrie found marked

limitations, despite having observed no significant abnormalities. (Id.) The Commissioner asserts that the ALJ discounted Ms. Fauteux' opinion because it was inconsistent with her treatment notes. (Id. at 8.) The Commissioner contends therefore, that the ALJ properly explained the weight she accorded the two opinions and her analysis therefore, was appropriate under the Regulations. (Id.)

Claimant asserts in reply that the Commissioner supplied post hoc rationale to explain the ALJ's conclusory findings. (Document No. 15 at 2-3.) Claimant notes that the Commissioner references the ALJ's conclusory language, but then cites parts of the medical evidence that supports her conclusions. (Id. at 3.) Claimant asserts that the ALJ's articulated reasons for rejecting the two opinions were not based on the totality of the evidence, were conclusory, and they consisted of picking out only those portions of the opinions that supported the ALJ's conclusion without explaining why the remaining portions of the opinions that supported Claimant's claims were rejected. (Id.)

Analysis.

Claimant alleges that the ALJ erred in failing to give proper weight to the opinions of Ms. Guthrie and Ms. Fauteux.  (Document No. 13 at 13-16.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2013). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given

to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2013). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). Ultimately, it is the

responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The record reflects Claimant's treatment with Mary Fauteux, PA-C, at Schwabe and Associates, from August 2010, through March 2011. (Tr. at 398-415.) On August 24, 2010, Ms. Fauteux indicated that Claimant's condition was stable, despite complaints of panic attacks resulting from eight people living in her household. (Tr. at 408-09.) Claimant reported on September 7, 2010, that Klonopin helped her symptoms and Ms. Fauteux again assessed her condition as stable and assessed a GAF of 72. (Tr. at 406-07.) It was noted that her attention span/concentration was "pretty good." (Tr. at 406.) Claimant's stable condition remained unchanged on September 20 and October 18, 2010. (Tr. at 402-05.) Claimant reported that she was doing pretty good, with no concerns. (Tr. at 402.)

On September 20, 2010, Ms. Fauteux completed a comprehensive psychiatric evaluation. (Tr. at 398-99.) Claimant reported that she felt overwhelmed with her living arrangements. (Tr. at 398.) Mental status examination revealed that Claimant was neatly groomed and appropriately dressed, had a euthymic mood and appropriate and congruent affect, exhibited normal thought content and processes, exhibited clear and coherent speech, was fully alert and oriented, and displayed no psychomotor agitation or retardation. (Tr. at 399.) Her judgment and insight were fair, attention span

10

and concentration were fair, and remote and recent memory were intact. (Id.) Ms. Fauteux diagnosed panic disorder with agoraphobia; major depressive disorder, recurrent, moderate; and assessed a GAF of 72. (Id.) She added Klonopin and opined that Claimant's prognosis was good. (Id.) On January 6 and March 31, 2011, Ms. Fauteux noted that Claimant was stable. (Tr. at 400-01, 410-15.)

On February 4, 2013, Ms. Fauteux completed a form Mental Assessment of Ability to Do Work-Related Activities. (Tr. at 514-16) Ms. Fauteux opined that Claimant had extreme limitations in her ability to deal with the public and work stresses, and complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 515-16.) She assessed marked limitations in Claimant's ability to behave in an emotionally stable manner, relate predictably in social situations, relate to co-workers, interact with supervisors, and understand, remember, and carry out complex job instructions. (Id.) Ms. Fauteux assessed moderate limitations in Claimant's ability to follow work rules, use judgment, function independently, maintain attention/concentration, maintain personal appearance, and understand, remember, and carry out detailed, but not complex job instructions. (Id.) Finally she assessed slight limitations in her ability to understand, remember, and carry out simple job instructions. (Tr. at 515.) In support of her findings, Ms. Fauteux referred to Claimant's diagnoses of depression and anxiety with agoraphobia. (Tr. at 516.)

On July 9, 2012, Claimant was evaluated by Amy Guthrie, M.A. (Tr. at 507-12.) Claimant reported excessive sleep, daily crying spells, lack of energy, increased appetite, a neutral mood, depressive bouts of no more than two weeks in duration, excessive worry, difficulty concentration and focusing, occasional sleep problems when anxious, an inability to relax, feelings of being overwhelmed, a history of panic attacks, and an avoidance of crowds of people. (Tr. at 508.) Mental status exam revealed that Claimant was cooperative, exhibited coherent and relevant speech, was

mildly depressed and tearful with an appropriate affect, was coherent in thought process, was generally suspicious of others, experienced perceptual disturbances, and had normal psychomotor behavior. (Tr. at 510.) Her insight, concentration, pace, and social functioning were mildly deficient; judgment and recent memory were moderately deficient; and immediate and remote memory and persistence were within normal limits. (Id.)

Regarding social functioning, Ms. Guthrie noted that Claimant maintained good eye contact, was generally appropriate, was able to generate conversation spontaneously, and reported that she interacted with her family, texted her step-granddaughter's grandmother daily, texted a friend a couple times a month, received visits from family members, visited her daughter every couple days, and went grocery shopping. (Id.) Claimant reported her activities to have included some cleaning, caring for her personal hygiene with some issues, occasionally doing laundry, cleaning te porch, driving twice a month, watches a little television, and getting on Facebook daily. (Tr. at 510-11.)

Ms. Guthrie diagnosed major depressive disorder, recurrent, severe without psychotic features; generalized anxiety disorder; and panic disorder. (Tr. at 511.) She opined that Claimant's prognosis was guarded but that she was capable of managing her funds. (Id.)

Ms. Guthrie also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on which she opined that Claimant had marked limitations in her ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. at 504-06.) She assessed moderate limitations in Claimant's ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; and interact appropriately with supervisors and co-workers. (Tr. at 504-05.) Finally, Ms. Guthrie assessed mild limitations in Claimant's ability to understand, remember, and carry out simple instructions and make judgment on simple work-related decisions. (Tr. at 504.) In

12

support of her assessments, Ms. Guthrie noted that on exam, Claimant's social judgment and recent memory were moderately deficient. (Tr. at 504.) She further noted that Claimant's anxiety affected her ability to interact with customers, as history demonstrated heightened anxiety during the Christmas shopping season and on Black Friday. (Tr. at 505.) Finally, she opined that Claimant's depression, anxiety, and panic disorder would cause her to have excessive absenteeism and poor interpersonal relations. (Tr. at 505.)

In her decision, the ALJ summarized Ms. Guthrie's opinions and accorded them some weight to the extent her opinion was consistent with the ALJ's RFC assessment. (Tr. at 22.) The ALJ noted that Ms. Guthrie's examination failed to reveal any significant abnormalities and that her marked limitations were based on Claimant's self-reported symptoms. (Id.) Nevertheless, the ALJ gave Claimant the benefit of the doubt and assessed in her RFC limitations to only simple work-related decisions in an environment that excluded fast paced production requirements with few, if any, changes in work routine. (Id.)

The ALJ correctly noted that Ms. Guthrie's examination revealed, at most, moderate limitations in judgment and recent memory. There were no marked or extreme findings on examination. Nevertheless, Ms. Guthrie assessed marked limitations in Claimant's ability to interact with the public and respond to work situations and to changes in the work setting. Despite having given Ms. Guthrie's opinion only some weight, the ALJ ultimately accommodated her marked limitations by precluding Claimant from having interaction with the general public and requiring only simple work-related decisions in an environment with few changes in routine. The ALJ further accommodated Ms. Guthrie's moderate limitations by limiting Claimant only to occasional interaction with co-workers and supervisors and limiting her to making only simple decisions. (Tr. at 16.) Thus, despite Claimant's challenge to the ALJ's weight accorded Ms. Guthrie's opinion, she

13

essentially adopted the limitations assessed. Claimant correctly contends however that the ALJ failed to acknowledge Ms. Guthrie's opinion that Claimant would have excessive absenteeism resulting from her mental impairments. When Claimant's attorney incorporated excessive absenteeism into the hypothetical question posed to the VE, the response was that jobs would be precluded. (Tr. at 570.) In view of Claimant's reports of excessive sleep, fatigue, and crying spells during bouts of depression, the undersigned finds that remand is required to consider further the extent of Claimant's absenteeism.

The ALJ also acknowledged Ms. Fauteux' opinion and noted that it was inconsistent with her treatment notes, which revealed that Claimant was doing well with medication management. (Tr. at 22.) Though the ALJ did not elaborate on how the opinion and treatment notes were inconsistent, it is clear upon reviewing the treatment notes that Ms. Fauteux consistently noted that Claimant's condition was stable with medication, as the ALJ decided. Thus, the undersigned finds that any error that the ALJ may have made in failing to offer an explanation with specific references to the medical record is harmless.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 14.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for further administrative proceedings to re-evaluate the opinion evidence pertaining to excessive absenteeism and Claimant's ability to perform work that exists in significant numbers in the national and regiona economy, and **DISMISS** this matter from the Court's docket..

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**,

14

and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 31, 2015.

R. Clarke VanDervort
United States Magistrate Judge

15